UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PEDRO M. JOHNSON,

                                Plaintiff,

        v.

ROCKLAND COUNTY BOCES, MARY
JEAN MARSICO, *and* DANIEL WILSON

                                Defendants.

No. 21-CV-3375 (KMK)

OPINION & ORDER

Appearances:

Pedro M. Johnson
Southbury, CT
*Pro Se Plaintiff*

Barbara M. Maisto, Esq.
Bond Schoeneck & King PLLC
Garden City, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Pedro M. Johnson ("Johnson" or "Plaintiff") brings this Action pro se, pursuant to 42

U.S.C. § 1981 ("§ 1981"), 42 U.S.C. §§ 2000e, *et seq.* (Title VII of the Civil Rights Act or "Title

VII"), N.Y. Exec. Law §§ 290, *et seq.* (New York State Human Rights Law or "NYSHRL"), and

N.Y. City Admin. Code §§ 8-101, *et seq.* (New York City Human Rights Law or "NYCHRL"),

against Rockland County Board of Cooperative Education Services ("BOCES"), Mary Jean

Marsico ("Marsico"), and Daniel Wilson ("Wilson"; collectively, "Defendants"), alleging

discrimination, hostile work environment, refusal of employment, and termination of

employment on the basis of his race and marital status in violation of the aforementioned anti-discrimination laws.  (*See generally* Am. Compl. ("AC") (Dkt. No. 22).)[1, 2]

Before the Court is Defendants' Motion to Dismiss the Amended Complaint (the "Motion").  (*See* Not. of Mot. (Dkt. No. 24).)  For the following reasons, Defendants' Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

Unless otherwise stated, the following facts are drawn from the Amended Complaint and are assumed true for the purpose of resolving the instant Motion.[3]  *See Div. 1181 Amalgamated*

---

[1] For context, BOCES is a public organization created by the New York State legislature in 1948 to provide additional educational programs to school districts across the state.  *See BOCES: Primer, Ed Management Services*, New York State Educ. Dep't, https://www.p12.nysed.gov/mgtserv/boces/primer.html (last visited Aug. 8, 2022).  When two or more school districts believe they could combine and pool resources to better provide certain educational programming, they do so formally and create a BOCES district.  *See BOCES: Primer*, *supra*.  Accordingly, there exist multiple BOCES "supervisory district[s]" across New York; each district "is governed . . . by a Board of Education, which is made up of one representative from" each "component" school district and which "appoints its own chief executive officer," or "superintendent."  *Id.*

[2] In both Plaintiff's Amended Complaint as well as Defendants' Memoranda, the second defendant is referred to as "Marsico."  (*See generally* AC; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 26); Defs.' Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply Mem.") (Dkt. No. 29).)  By contrast, in his Opposition, Plaintiff refers to her as "Marisco."  (*See generally* Pl.'s Mem. of Law in Opp. of Mot. ("Pl.'s Mem.") (Dkt. No. 28).)  For clarity, the Court refers to her as "Marsico."

[3] In his memorandum opposing Defendants' Motion, Plaintiff makes additional factual allegations pertaining to similarly situated teachers outside of his protected class. (*Compare generally* AC, *with* Pl.'s Mem. 8–9 (adding details regarding similarly situated Caucasian teachers who "had attendance issues but were not disciplined" the way Plaintiff was).)

Despite Defendants' assertions to the contrary, (*see* Defs.' Mem. 6–7), the Court's "mandate to read the papers of pro se litigants generously makes it appropriate to consider [a] plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing *Gil v. Mooney*, 824 F.2d

*Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).[4]

### 1.  Parties

Plaintiff was a special education social studies teacher at BOCES CBI Tech.  (AC ¶ 2.) Non-party Pamela Charles ("Charles") was the principal of BOCES CBI Tech until 2019.  (*Id.* ¶¶ 3–4.)  Wilson was the principal of BOCES CBI Tech from 2019 through 2020.  (*Id.* ¶ 4.) Marsico is the former chief operating officer for BOCES responsible for overseeing its daily operations.  (*Id.* ¶ 5.)

### 2.  Events Giving Rise To This Action

In November 2017, Plaintiff was hired by Rockland County BOCES to teach special education social studies.  (*Id.* ¶ 2.)  "In early 2018," Charles informed Plaintiff that he "had to get

---

192, 195 (2d Cir. 1987)).  However, when such additional materials raise new facts, the Court may only consider them "to the extent that those allegations are consistent with the Amended Complaint."  *Williams v. Barometre*, No. 20-CV-7644, 2022 WL 903068, at *2 & n.4 (S.D.N.Y. Mar. 28, 2022) (citing *Veras v. Jacobson*, No. 18-CV-6724, 2020 WL 5659551, at *1 n.1 (S.D.N.Y. Sept. 23, 2020)).

Because these new facts sound generally in the same concern—namely, Plaintiff's allegations of discriminatory treatment—the Court deems them appropriately raised and considered here.  *See Williams*, 2022 WL 903068, at *2 & n.4 (considering certain new facts alleged in the plaintiff's opposition papers because they were consistent with the claims alleged in the complaint); *see also Veras*, 2020 WL 5659551, at *1 n.1 ("The Court properly considers factual allegations contained in [the] [p]laintiff's opposition papers . . . to the extent that those allegations are consistent with the Amended Complaint."), *reconsideration denied*, 2020 WL 6694410 (S.D.N.Y. Nov. 13, 2020).

[4] The vast majority of Plaintiff's factual allegations are contained in an addendum to the AC, which is comprised of numbered paragraphs.  A small handful of additional facts are contained in the remainder of the AC.  Therefore, when citing to allegations contained in the addendum's numbered paragraphs, the Court cites directly to the paragraph number; otherwise, the Court cites to the ECF-stamped page number at the upper right-hand corner of the Amended Complaint.

[his] special education certification to continue teaching special education social studies." (*Id.* ¶ 3.) He complied, receiving his special education certification in July of 2019. (*Id.*)

Plaintiff alleges that from 2017 to 2019, Charles conducted classroom observations of Plaintiff's classroom teaching on December 18, 2018, April 10, 2019, and February 5, 2020 as part of Charles's overall teaching evaluation of Plaintiff. (*Id.* ¶ 6.) Plaintiff alleges that he "was rated as an overall effective teacher" in each of his year-end evaluations, including being rated as "effectively" or "highly effective" in every possible category. (*Id.* ¶¶ 7, 6.) Plaintiff also alleges that he received excellent feedback based on his "preparedness and use of real-life examples in the classroom." (*Id.* ¶ 6.)

In 2019, Wilson became the principal of BOCES. (*Id.* ¶ 4.) In October 2019, Wilson allegedly announced that "he would be looking to admit a 'new type' of BOCES student" at the faculty meeting. (*Id.* ¶ 8.) After Wilson became a principal and made this announcement, Plaintiff alleges that "new students admitted to the school consisted of primarily white or white Hispanic students," while prior to this announcement and Wilson's tenure, "there were more black students within the school. (*Id.* ¶ 9.)

Separately, on November 19, 2019, Wilson conducted an announced observation of Plaintiff's class. (*Id.* ¶ 10.) Plaintiff was not told immediately of the results of Wilson's evaluation, nor could he obtain the feedback otherwise; Plaintiff was instead offered the report nearly two months after the observation was conducted on January 17, 2020. (*See id.*) For this observation, Wilson rated Plaintiff as "effective" and "developing." (*Id.*)

On March 2, 2020, Plaintiff received a disciplinary warning regarding his alleged tardiness to school, directing him to "be on time" or "notify the front desk" when he would be late. (*Id.* ¶ 11.) Plaintiff alleges that notwithstanding this disciplinary warning, he had always

made such notifications whenever he would be late.  (*Id.*)  Plaintiff also told Wilson that his "commute is nearly 1.5 hours each way," meaning that "on [the] rare occasions" that he is late, it is only by "just a few minutes" and "often due to traffic and or impending weather conditions." (*Id.*)  Moreover, Plaintiff states that even when he is late, he is "still always able to fulfill [his] duty of making morning announcements."  (*Id.*)

On March 4, 2020, Plaintiff was met at school by several individuals, including non-party Yasmin Helou-Care ("Helou-Care"), the executive director of Human Resources.  (*Id.* ¶ 13.) During the meeting, Plaintiff was served with child support papers by an unnamed individual. (*Id.*)

Plaintiff alleges that on March 31, 2020, less than one month after Plaintiff was publicly served child support papers, Wilson told the staff in a meeting conducted on Zoom that BOCES would be reducing staff "as BOCES is ultimately a business."  (*Id.*)  On April 3, 2020, Helou-Care informed Plaintiff that "Marsico would recommend to the BOCES Board that [Plaintiff] be effectively terminated as of June 30, 2020."  (*Id.* ¶ 14.)  Plaintiff "was told that his performance and feedback was not the reason for his termination but rather that at this time the 'fit wasn't right.'"  (*Id.* ¶ 15.)  However, Plaintiff alleges, "no other teachers were dismissed as a result of this reduction in staff."  (*Id.*)  Plaintiff also states elsewhere in the Amended Complaint that when listing the reasons for Plaintiff's termination, BOCES stated excessive absence.  (*Id.* at 18.) However, Plaintiff was "only absent when it was absolutely necessary."  (*Id.*)  Moreover, Plaintiff avers, "[o]ther Caucasian teachers would arrive late or even had more absences than [him]self yet still work at the school."[5]

---

[5] In subsequent filings, Plaintiff identifies such individuals as "Stacy Page, Mrs. Covati, [and] Patty Yacuk, all tenured teachers at the school" who were Causasian and "had attendance

Following Plaintiff's termination, Plaintiff "wrote a letter" regarding these events "to the Rockland B.O.C.E.S. Board and their attorney." (AC 18.) Plaintiff alleges that while he was permitted to read his letter at the Board meeting on May 6, 2020, "[n]o changes were made[.]" (*Id.*)

Finally, Plaintiff alleges that a white male of a similar age named Timothy Cokley filled the vacancy created by his termination within a year and that, following his termination and replacement, there are currently no other African American teachers at CBI Tech. (*See id.* ¶¶ 15, 16; Pl.'s Mem. 4.)[6]

B. Procedural History

Plaintiff filed his Complaint on April 16, 2021. (Dkt. No. 2.) On May 5, 2021, pursuant to 28 U.S.C. § 1915 (e)(2)(b) and Fed. R. Civ. Proc. 12(h)(3), this Court issued an order dismissing multiple claims without prejudice. (*See* Op. & Order ("2021 Op.") 2 (Dkt. No. 5).) The Court subsequently referred the case for mediation on May 6, 2021. (Dkt. No. 9.)

On August 17, 2021, Plaintiff filed a letter seeking an extension of time to file an Amended Complaint, (Dkt. No. 16), which the Court granted on August 20, 2021, (Dkt. No. 21). Plaintiff filed an Amended Complaint on August 20, 2021. (Dkt. No. 22.) Defendants filed a

---

issues" but against whom "no disciplinary action had been taken." (Pl.'s Mem. 3.) Plaintiff does not provide a first name for "Mrs. Covati." (*See id.*)

[6] The Court is aware that in the addendum to his New York State Division of Human Rights Employment Complaint Form, submitted as part of his Amended Complaint, Plaintiff alleges that there is one other African American teacher in BOCES/CBI Tech. (*See* AC 18.) However, this form is dated several weeks before the Amended Complaint was filed. (*See id.* at 19 (dating the addendum to August 4, 2020).) Pursuant to the Court's duty where parties appear pro se to "construe[ ] [a complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]," *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted), the Court considers this difference due to the difference in time rather than contradictory and considers only the most up-to-date allegation.

Motion to Dismiss and accompanying papers on October 15, 2021.  (Not. of Mot.; Decl. of Barbara Maisto (Dkt. No. 25); Defs.' Mem.)  On November 15, 2021, Plaintiff filed an Opposition to Defendants' Motion to Dismiss.  (Pl.'s Mem.)  On December 6, 2021, Defendants filed a Reply in support of their Motion.  (Defs.' Reply Mem.)  On May 10, 2022, Defendants filed a letter seeking adjournment of mediation pending the outcome of the instant Motion, (Dkt. No. 33), which the Court granted the same day, (Dkt. No. 34).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will .

. . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)));  *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[ ] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Where, as here, a plaintiff proceeds pro se, the Court must "construe[ ] [his complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes*, 723 F.3d at 403 (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted).  However, when the complaint is drafted by a pro se plaintiff, the Court may

consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

    B.  Analysis

       At this stage, the following claims remain intact: (1–2) race discrimination under § 1981 and NYSHRL against all Defendants; (3) race discrimination under Title VII against BOCES; (4) marital status discrimination under Title VII against WCHCC; (5) marital status discrimination under NYSHRL against Individual Defendants.  (*See generally* AC.)[7]  The Court will review each claim—or group of claims, where appropriate—separately.

       1.  Notice of Claim

       Apart from challenging the merits of Plaintiffs' claims, Defendants argue that Plaintiff's failure to file a timely notice of claim—and his failure to plead having done so—is "a fatal defect mandating dismissal of the Amended Complaint against Defendants *in its entirety*, with prejudice."  (Defs.' Reply Mem. 5 (emphasis added).)  Plaintiff does not exactly oppose this: rather, Plaintiff argues that "notices of claim . . . have no bearing on [Plaintiff's] federal claims" nor are they "necessary to be filed against individual defendants."  (Pl.'s Mem. 5.)  Additionally, Plaintiff argues, where an individual has been placed on notice of the facts of the claim to an administrative body "which sufficiently informs the municipality or school district of the claim,

---

[7] In the Amended Complaint, Plaintiff checked off the box formally bringing a claim under the New York City Human Rights Law.  (*See* AC 4.)  However, upon Defendants' arguments that such claims were brought inappropriately, (*see* Defs.' Mem. 16–17), Plaintiff formally withdrew this claim, (*see* Pl.'s Mem. 9).  Accordingly, this claim is dismissed.

the charge has been held to satisfy the notice of claim requirement." (*Id.* at 6.) "Therefore," Plaintiff concludes, "the lack of a notice of claim filing here should not bar" either his federal claims or his state claims. (*Id.*)[8]

In broad strokes, there exist three separate issues relating to the applicable state law-based notice requirements about which the Parties disagree: (1) whether Plaintiff's efforts before the EEOC satisfy the notice requirement; (2) whether the notice requirement applies to federal claims; and (3) whether the principal is considered an "officer" subject to the notice requirement, meaning whether the notice of claim requirements apply to claims against Wilson.

a.  Applicable Law

New York Education Law § 3813(1) provides:

> No action or special proceeding, for any cause whatever, ... shall be prosecuted or maintained against any school district, board of education, ... or any officer of a school district, [or] board of education ... unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim[.]

N.Y. Educ. Law § 3813(1) ("§ 3813"); *see also Marino v. Chester Union Free Sch. Dist.*, 859 F. Supp. 2d 566, 570 (S.D.N.Y. 2012) ("Section 3813(1) of [the] New York State Education Law provides that no action may be maintained against a school district unless notice of claim was served within three months of the date on which the claim accrued."). "Education Law §

---

[8] Technically, Plaintiff states his notices-related arguments (as well as the headings in his memoranda) only with respect to federal claims against all defendants and state claims against individual defendants. (*See* Pl.'s Mem. 5–6.) However, given that Plaintiff's argument regarding the EEOC's charge as having satisfied any notice requirements by definition encompasses all defendants, and in light of the Court's obligation to "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest," *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1074 (2d Cir. 2021) (quoting *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017)), the Court interprets Plaintiff as having argued this with respect to his claims against all defendants.

3813(1) is a statutory condition precedent to a [plaintiff's] bringing of a proceeding against a school district or board of education, and a [plaintiff's] failure to comply is a fatal defect mandating dismissal of the action." *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 366 (W.D.N.Y. 2010) (quotation marks omitted); *see also Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 311 (E.D.N.Y. 2014) (holding that claims "brought against a school district, board of education, or school officer are subject to the notice of claim requirements contained in [New York] Education Law § 3813(1).")

The required notice is procedurally strict.  The New York Court of Appeals has held that "failure to present a claim within the statutory time limitation or to notify the correct party is a *fatal defect*." *Parochial Bus Sys., Inc. v. Bd. of Educ. of City of N.Y.*, 458 N.E.2d 1241, 1245 (N.Y. 1983) (citations omitted) (emphasis added).  To that end, "[t]he statutory prerequisite is not satisfied by presentment to any other individual or body, and, moreover, the statute permits no exception regardless of whether the board [or any individual thereof] had actual knowledge of the claim or failed to demonstrate actual prejudice." *Id.*  Given such exacting language, federal courts in New York have made clear that "[n]otice of claim requirements are construed strictly by New York state courts and failure to abide by their terms mandates dismissal of the action." *Smith v. N.Y.C. Dep't of Educ.*, 808 F. Supp. 569, 578 (S.D.N.Y. 2011) (citation and quotation marks omitted); *see also AT & T v. N.Y.C. Dep't of Human Res.*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990) (same) (collecting cases).

In addition to providing notice, plaintiffs must plead that they complied with § 3813(1)'s requirements in their complaint, *see Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 334, 360 (E.D.N.Y. 2013) ("[Section 3813(1)] specifically requires a plaintiff to plead compliance with § 3813(1)'s notice of claim requirements."), irrespective of whether those claims were brought in

state or federal court, *see Smith*, 808 F. Supp. 2d at 578 (holding that § 3813's "notice of claim requirements apply to state law claims regardless of whether those claims were brought in state or federal court" (citations omitted)); *see also Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) ("[I]n a federal court, state notice-of-claim statutes apply to state-law claims."). And as it pertains to the substance of this Action, notice-of-claim requirements apply to causes of action sounding in discrimination. *See, e.g.*, *Smith*, 808 F. Supp. 2d at 578, 581 (applying the notice requirement to discrimination, retaliation, and hostile work environment claims); *Lewinter v. N.Y.C. Dep't of Educ.*, No. 09-CV-227, 2010 WL 2746334, at *2 (S.D.N.Y. July 9, 2010) (applying the notice requirement to a discrimination claim); *Augustin v. Enlarged City Sch. Dist. of Newburgh*, 616 F. Supp. 2d 422, 445–46 (S.D.N.Y. 2009) (same).

By contrast, the standard for the content required in such a notice is slightly more forgiving; the New York Court of Appeals has repeatedly held "that, where the school district has been 'sufficiently informed' of the claim, 'all that is required is substantial compliance with the statute' regarding the degree of descriptive detail in a notice of claim." *Parochial Bus Sys.*, 458 N.E.2d at 1245 (quoting *Widger v. Central Sch. Distr. No. 1*, 219 N.E.2d 425, 426 (N.Y. 1966)).

### b.  Application

#### i.  The Sufficiency of an EEOC Charge

Defendants argue that, as a general principle, an EEOC charge cannot satisfy § 3813's requirements, contending that compliance with this law is achieved *only* when a plaintiff "file[s] a notice of claim with the Board of Education."  (Defs.' Mem. 6.)  In the alternative, Defendants argue that, even if an EEOC *could* satisfy a plaintiff's requirement, the one at issue in this Action

nonetheless "would not suffice because it was not timely served on the Board of Education, which is a fatal defect." (*Id.*)  Defendant's second argument carries the day as applied here.

"[C]ourts in [the Second] Circuit have begun to coalesce around the rule that an EEOC complaint can satisfy the notice of claim requirement in limited circumstances where the charge puts the school district on notice of the precise claims alleged, is served on the governing board of the district (and not a different arm of the district), and is served within the statutory time period." *Riccardo v. N.Y.C. Dep't of Educ.*, No 16-CV-4891, 2016 WL 7106048, at *8 (S.D.N.Y. Dec. 2, 2016) (quotation marks omitted) (collecting cases), *report and recommendation adopted sub nom. U.S. v. N.Y.C. Dep't of Educ.*, 2017 WL 57854 (S.D.N.Y. Jan. 4, 2017); *Brtalik v. S. Huntington Union Free Sch. Dist.*, No. 10-CV-10, 2010 WL 3958430, at *5 (E.D.N.Y. Oct. 6, 2010) (holding similarly).  Indeed, only last year another court in this district reaffirmed this principle. *See Santana v. Mount Vernon City Sch. Dist./Bd. of Educ.*, No. 20-CV-3212, 2021 WL 4523770, at *14 (S.D.N.Y. Sept. 30, 2021) (holding that "an EEOC charge may satisfy the requirements of [§] 3813 so long as the EEOC charge: '(1) places the school district on notice of the precise claims alleged; and (2) is served on the party required by [§] 3813 within the statutory time period.'" (quoting *Richard v. N.Y.C. Dep't of Educ.*, No. 06-CV-957, 2017 WL 1232498, at *21 (E.D.N.Y. Mar. 31, 2017))).

A timely and properly-served EEOC charge satisfies § 3813 and is aligned with the Court of Appeals' decision in *Parochial Business Systems*, which focused on timeliness and proper notification of the correct body; not the *form* of that notification.  To that end, in at least one case, an Appellate Division court has held that a "petition to the Commissioner of Education constituted the functional equivalent of a notice of claim" where it provided notice of the nature

of the claim and the essential facts underlying the claim.  *See Mennella v. Uniondale Union Free Sch. Dist.*, 732 N.Y.S.2d 40, 41–42 (App. Div. 2001).

Adopting the "coalesce[nce]" view that an EEOC charge could satisfy § 3813's notice requirements, Plaintiff's allegations still fall short.  Plaintiff's only allegations regarding his communication with the appropriate governing body is his composition of a letter "to the Rockland B.O.C.E.S. Board," which was read aloud to the Board on May 6, 2020.  (AC 18.) Specifically, Plaintiff avers that this letter was "regarding Dan Wilson's statement."  (*Id.*)  While Plaintiff communicated with the correct body at one point and may have even communicated about the issue of racism generally, nowhere does he allege that he communicated the "precise claims" now "alleged" in this Action.  *Legrá v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, No. 14-CV-9245, 2016 WL 6102369, at *3 (S.D.N.Y. Oct. 19, 2016) (quoting *Brtalik*, 2010 WL 3958430, at *5).  As the Court of Appeals made clear, "[w]hat satisfies [§ 3813] is not knowledge of the wrong.  What the statute exacts is notice of the 'claim.'"  *Parochial Bus Sys.*, 458 N.E.2d at 1245 (quoting *Thomann v. City of Rochester*, 176 N.E. 129, 131 (N.Y. 1931)). Accordingly, Plaintiff's state law claims against BOCES and its officers are dismissed for failure to file a notice of claim.  *See Riccardo*, 2016 WL 7106048, at *9 (recommending dismissal of all state law claims where neither party "indicate[d] whether the EEOC complaint was served on the governing board of the school or whether its charges were sufficiently precise to put the school district on notice of the plaintiff's claims" (footnote omitted)); *Legrá*, 2016 WL 6102369, at *3 (granting a motion to dismiss where "the plaintiff alleges only the date that she filed the EEOC charge" but "not [] that the EEOC charge provided the required notice" nor "that she served the notice on the governing arm of the district, must less that she did so within three months of the time that her claims accrued").

14

## ii.  State Notice Requirements for Federal Claims

The second dispute concerns whether state notice of claim requirements apply to federal claims.  Defendants argue that Plaintiff's failure to serve timely notice—and his failure to plead having done so—is "a fatal defect mandating dismissal of the Amended Complaint against Defendants *in its entirety*, with prejudice."  (Defs.' Reply Mem. 5 (emphasis added).)

In ruling as to the applicability of state notice requirements, the Supreme Court has addressed the interplay between such notice requirements against state and federal claims:

> [T]he State has chosen to expose its subdivisions to large liability and defense costs, and, in light of that choice, has made the concomitant decision to impose conditions that assist municipalities in controlling those costs.  The decision to subject state subdivisions to liability for violations of federal rights, however, was a choice that Congress, not [a state] [l]egislature, made, and it is a decision that the State has no authority to override.  Thus, however understandable or laudable the State's interest in controlling liability expenses might otherwise be, it is patently incompatible with the compensatory goals of the federal legislation, as are the means the State has chosen to effectuate it.
>
> This incompatibility is revealed by the design of the notice-of-claim statute itself, which operates as a condition precedent to recovery in all actions brought in state court against governmental entities or officers.  Congress, we have previously noted, surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action.
>
> States, however, may no more condition the federal right to recover for violations of civil rights than bar that right altogether, particularly where those conditions grow out of a waiver of immunity which, however necessary to the assertion of state-created rights against local governments, is entirely irrelevant insofar as the assertion of the federal right is concerned and where the purpose and effect of those conditions . . . is to control the expense associated with the very litigation Congress has authorized.

*Felder v. Casey*, 487 U.S. 131, 143–44 (1988) (alterations, citations, and quotation marks omitted).

The language Defendants cite to the contrary does not dispel the Supreme Court's pronouncement.  Defendants principally focus on a handful of federal cases that use broad

15

language regarding § 3813, saying the provision "is a condition precedent to commencement of an action . . . ."  (Defs.' Mem. 5 (quoting *DT v. Somers Cent. Sch. Dist.*, 588 F. Supp. 2d 485, 500 (S.D.N.Y. 2008)); *see also id.* at 5–6 (citing *Laface v. Eastern Suffolk Boces*, 349 F. Supp. 3d 126, 162–63 (E.D.N.Y. 2018); then citing *Newman v. Leroy Cent. Sch. Dist.*, No. 07-CV-6299, 2008 WL 974699, at *2 (W.D.N.Y. April 8, 2008)); Defs.' Reply Mem. 2–3 (citing the same cases).)  Yet, in one of the three cases on which Defendants rely, *Newman*, the defendants *only* sought to dismiss the state causes of action, meaning the Court had no occasion to apply § 3813 in the context of federal claims.  *See* 2008 WL 974699, at *1; *see generally id.*  And in the other two, each court considered the merits arguments of federal discrimination claims without considering § 3813, and, only *after* doing so, considered § 3813 specifically in the context of state law claims.  *See generally Laface*, 349 F. Supp. 3d at 144–63; *DT*, 588 F. Supp. 2d at 493–501.

This pattern—adjudicating the merits of federal claims without considering § 3813, and thereafter considering the provision solely in the context of state claims—matches the vast majority of federal courts in New York to have presided over analogous cases.  *See, e.g.*, *DeLaRosa v. N.Y.C. Dep't of Educ.*, No. 21-CV-4051, 2022 WL 2752589, at *3–6 (S.D.N.Y. July 14, 2022) (adjudicating federal claims on other grounds, i.e. without discussion of § 3813, and subsequently considering § 3813 only in the context of state law claims thereafter); *Olin v. Rochester City Sch. Dist.*, No. 18-CV-6006, 2022 WL 967707, at *3 (W.D.N.Y. Mar. 31, 2022) (same); *Freud v. N.Y.C. Dep't of Educ.*, No. 21-CV-2281, 2022 WL 889213, at *5–7 (S.D.N.Y. Mar. 25, 2022) (dismissing only "state- and city-law claims" as a result of the plaintiff's failure to provide timely notice of claim under § 3813 before considering federal claims, which does not include discussion of § 3813); *Ochoa v. N.Y.C. Dep't of Educ.*, No. 20-CV-9014, 2021 WL

5450343, at *2 (S.D.N.Y. Nov. 22, 2021) (same); *Williams v. Geiger*, 447 F. Supp. 3d 68, 87 (S.D.N.Y. 2020) (considering § 3813 to only state law claims after adjudicating federal claims on other considerations); *Williams v. N.Y.C. Dep't of Educ.*, No. 19-CV-1353, 2019 WL 4393546, at *5–17 (S.D.N.Y. Aug. 28, 2019) (same); *Smith*, 808 F. Supp. 2d at 578–84 (same).  In light of the great weight of authority as well as the Supreme Court's reasoning with respect to another state's notice requirements, the Court agrees with Plaintiff that New York Education Law § 3813(1) does not apply to federal claims.  Accordingly, Defendants' Motion, to the extent to seeks to dismiss federal claims pursuant to failure to file notice under state notice of claim requirements, is denied.

### iii.  Application of Notice Requirements to Wilson

The third and final dispute surrounding § 3813 in this Action concerns whether § 3813 applies to claims against Wilson as a school principal, i.e. whether he is considered an "officer[]."  Defendants assert that § 3813 applies.  (Defs.' Mem. 5–7; *see also* Defs.' Reply Mem. 3.)  Plaintiff disagrees.  (*See* Pl.'s Mem. 5.)

"There is conflicting authority addressing whether a principal or assistant principal can be considered an officer within the meaning of [§] 3813."  *Lawson v. N.Y.C. Bd. of Educ.*, No. 09-CV-1335, 2011 WL 5346091, at *19 (S.D.N.Y. Aug. 30, 2011) (collecting three cases from S.D.N.Y. and one from W.D.N.Y., with two falling on either side of the debate), *report and recommendation adopted*, 2011 WL 5346090 (S.D.N.Y. Nov. 4, 2011).  However, the weight of precedent favors the conclusion that principals and school administrators—as distinct from district-wide administrators—are not officers subject to § 3813.  *See, e.g.*, *Collins v. Indart-Etienne*, 72 N.Y.S.3d 332, 350 (Sup. Ct. 2018) (collecting cases).  Even a case on which Defendants rely, *Laface*, held similarly, albeit in dicta.  *See* 349 F. Supp. 3d at 163.

17

So, too, does the text of the relevant statute favor this conclusion.  New York Education Law § 2 defines a "school officer" as:

> a clerk, collector, or treasurer of any school district; a trustee; a member of a board of education or other body in control of the schools by whatever name known in a union free school district, central school district, central high school district, or in a city school district; a superintendent of schools; a district superintendent; a supervisor of attendance or attendance officer; or other elective or appointive officer in a school district whose duties generally relate to the administration of affairs connected with the public school system.

N.Y. Edu. L. § 2.  Plainly, principals' duties are not "connected with the public school system" or school district at large; they are captains of but one ship in the fleet.  Moreover, given the exhaustive list of positions captured in this definition, that the New York State Legislature chose to specifically omit principals, indicates a conscious choice to do so.  *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (explaining that the canon *expressio unius est exclusio alterius* "has force [] when the items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence" (quotation marks omitted)).  Simply put, "[i]f the Legislature wanted to [include principals], it knew what language would effectuate that intent."  *Manrique v. State Farm Mut. Auto. Ins. Co.*, No. 21-CV-224, 2021 WL 5745717, at *5 (S.D.N.Y. Dec. 2, 2021), *motion to certify appeal denied*, 2022 WL 2384170 (S.D.N.Y. July 1, 2022) (citations omitted).  Accordingly, § 3813's notice of claim requirement does *not* foreclose Plaintiff's state law claims against Wilson as the BOCES CBI Tech principal.[9]

---

[9] By contrast, Marsico is properly subject to § 3813.  The Parties do not seriously dispute this point, but it is worth making clear nonetheless.  Plaintiff alleges that "Marsico was the Chief Operating Officer for Rockland BOCES responsible for overseeing daily operations of Rockland BOCES including CBI Tech."  (AC ¶ 5.)  In other words, insofar as Plaintiff contends that Marsico's work was not focused on one school but instead spanned the entirety of the district, Marsico falls squarely within the realm of a school officer.  *See* N.Y. Edu. L. § 2.  Accordingly, Plaintiff's failure to timely file a notice of claim precludes his state law claims against Marsico.

2.  Race Discrimination Claims

Plaintiff brings claims under § 1981, Title VII, and the NYSHRL sounding in racial

discrimination based on allegedly adverse employment actions (his disciplinary warning, which

is alleged to have contributed to his termination) and harassment or creation of a hostile work

environment.  (*See generally* AC.)  Because race and sex discrimination claims brought under §

1981, Title VII, and the NYSHRL are all evaluated under the same framework, *see Mitchell v.*

*N.Y.C. Dep't or Educ.*, No. 20-CV-1555, 2022 WL 621956, at *5 (S.D.N.Y. March 3, 2022), the

Court reviews these claims simultaneously based on the facts alleged giving rise to these parallel

claims.

a.  Applicable Law

Section 1981 requires that "[a]ll persons within the jurisdiction of the United States shall

have the same right … to make and enforce contracts … as is enjoyed by white citizens."  42

U.S.C. § 1981(a).  Section 1981 thus prohibits racial discrimination "with respect to the

enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as

employment[.]"  *Calvelos v. City of New York*, No. 19-CV-6629, 2020 WL 3414886, at *9

(S.D.N.Y. June 22, 2020) (quoting *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 224–25

(2d Cir. 2004)).[10]

Title VII prohibits employers from discharging any individual "because of such

individual's race" or "sex."  42 U.S.C. § 2000e-2(a)(1).  To establish a claim of discrimination

under Title VII, a plaintiff must meet the burden of proving that the adverse employment action

---

[10] "Although § 1981 does not itself 'specially authorize private lawsuits to enforce' its
prohibitions, the Supreme Court has 'created a judicially implied private right of action.'"
*Rubert v. King*, No. 19-CV-2781, 2020 WL 5751513, at *6 (S.D.N.Y. Sept. 25, 2020)
(alterations omitted) (quoting *Comcast Corp. v. Nat'l Ass'n of African Am.–Owned Media*, 140
S. Ct. 1009, 1015 (2020)).

was motivated, at least in part, by "an impermissible reason, such as race, ethnic origin, or gender." *Fields v. N.Y. State Off. of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 119 (2d Cir. 1997). "The NYSHRL mirrors these federal obligations." *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 226 (2d Cir. 2014).

Claims for discrimination under § 1981, Title VII, and the NYSHRL are all analyzed under the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Brown*, 756 F.3d at 228–29 (discussing the *McDonnell Douglas* framework for Title VII); *Boncoeur v. Haverstraw-Stony Point Cent. Sch. Dist.*, No. 20-CV-10923, 2022 WL 845770, at *5 (S.D.N.Y. Mar. 22, 2022) (discussing the *McDonnell Douglas* framework for § 1981 and NYSHRL claims). Under this framework, a plaintiff must first show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). Further, a "plaintiff may allege that discrimination occurred in the form of discrete adverse employment actions, as well as by means of conduct creating a 'hostile work environment.'" *Rubert*, 2020 WL 5751513, at *6 (quoting *Patterson*, 375 F.3d at 226).

If a plaintiff successfully clears this hurdle, the burden then shifts to the employer to demonstrate a legitimate, non-discriminatory purpose for the adverse employment action. *See McDonnell Douglas*, 411 U.S. at 802. Finally, if an employer satisfies this requirement, the burden shifts back to the employee to demonstrate, by a preponderance of the evidence, that the non-discriminatory reason was actually pretext for discrimination. *See id.* 804–05; *see also*

20

*Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) (articulating

the three step *McDonnell Douglas* framework).

Precedent makes clear "a plaintiff is not required to plead a prima facie case under

*McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss,"

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (italics and quotation

marks omitted); *see also Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 6068597, at *1

(S.D.N.Y. Nov. 15, 2013) ("[A] [p]laintiff need not make out a prima facie case at the pleading

stage, and may withstand a motion to dismiss by providing a short and plain statement of the

claim that shows that she is entitled to relief that gives [the defendant] fair notice of the . . .

discrimination claim and the grounds upon which it rests." (italics omitted)).  Nonetheless, "the

elements thereof provide an outline of what is necessary to render her claims for relief

plausible."  *Sommersett v. City of New York*, No. 09-CV-5916, 2011 WL 2565301, at *5

(S.D.N.Y. June 28, 2011); *see also Littlejohn v. City of New York*, 795 F.3d 297, 311 & n.9 (2d

Cir. 2015) (noting that while a plaintiff need not plead a prima facie case of discrimination, "the

elements of a prima facie case may be used as a prism to shed light upon the plausibility of the

claim" (quotation marks omitted)); *Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d

301, 312 (S.D.N.Y. 2015) (collecting cases holding similarly); *Barker v. UBS AG*, No. 09-CV-

2084, 2011 WL 283993, at *5 (D. Conn. Jan. 26, 2011) ("[E]ven though establishing a prima

facie case of . . . discrimination is not necessary to survive a motion to dismiss, courts do use the

standard as a guidepost when determining whether the plaintiff has provided the defendant with

fair notice of her claim, as required by the Federal Rules of Civil Procedure.").

With respect to the final element, namely whether a plaintiff has adequately alleged "an

inference of discrimination," *Weinstock*, 224 F.3d at 42, "a plaintiff need only give plausible

support to a *minimal inference* of a discriminatory motivation," *Vega*, 801 F.3d at 84 (quotation marks omitted) (emphasis added).  Yet "a discrimination complaint . . . must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. Of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (alteration and quotation marks omitted).

A showing of an "inference of discriminatory motivation may be supported directly, such as by statements that an adverse employment action was related to [the] plaintiff's protected class, . . . or indirectly by an allegation that [the] plaintiff was treated different from and less favorably than similarly situated peers." *Roache v. Long Island Railroad*, 487 F. Supp. 3d 154, 172 (E.D.N.Y. 2020) (first citing *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir. 1984); and then *Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197, 208–09 (E.D.N.Y. 2017)).  Further, "[a]n inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 47, 502 (2d Cir. 2009)).  Alternatively, "[the] plaintiff also may create a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 611–12 (E.D.N.Y. 2017) (quoting *Vega*, 801 F.3d at 87).

"Clearing this low pleading threshold 'entitles the plaintiff to the temporary presumption of *McDonnell Douglas* until the defendant furnishes its asserted reasons for its action against the plaintiff,' the evaluation of which is more appropriately considered at summary judgment or at trial." *Roache*, 487 F. Supp. 3d. at 172 (quoting *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016); then citing *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209, 216 (E.D.N.Y. 2019)).

b.  Application

There is no debate that Plaintiff has plausibly alleged that he is a member of a protected class with respect to his race and color, (*see* AC ¶ 1).  *See Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999) (observing that "there is no doubt that [the plaintiff], who is black, is a member of a protected class").  Therefore, the Court must determine whether Plaintiff has adequately alleged the remaining elements, namely whether he is sufficiently qualified, whether he suffered either adverse employment actions or a hostile work environment, and whether such treatment gives rise to an inference of discrimination.  The Court considers each question in turn.  Before doing so, however, the Court reviews the specific individual involvement of one defendant.

i.  Marsico's Involvement

In its prior order, the Court dismissed discrimination claims under § 1981 and NYSHRL against Marsico because Plaintiff "d[id] not state any facts suggesting that [she] was involved personally in any discriminatory conduct."  (2021 Op. 2.)  Upon amending his complaint, Plaintiff has failed to remedy this infirmity.

While "the precise contours of supervisory liability in the § 1981 context" are, at present, "unsettled, . . . it is clear that § 1981 claims require personal involvement and discriminatory intent."  *Rubert*, 2020 WL 5751513, at *10; *see also Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389 (1982) (holding that a claim brought pursuant to "§ 1981 reaches only purposeful discrimination"); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) (explaining that § 1981 claims "must be predicated on the actor's personal involvement" (citations omitted)); *Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 261 (2d Cir. 2000) ("To establish a § 1981 claim, a plaintiff . . . must show . . . an intent to discriminate on the basis of race by the defendant . . . .").

23

The entire extent of Plaintiff's allegations regarding Marsico is that Helou-Care told Plaintiff that "Marsico would recommend to the BOCES Board" that Plaintiff be terminated, (AC ¶ 14). (*See generally id.*)  In other words, Plaintiff fails to allege that Marsico's recommendation comes as the result of her personal discriminatory intent due to Plaintiff's race. *See Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015) ("To state a discrimination claim under . . . § 1981, plaintiffs must sufficiently allege that defendants acted with discriminatory intent").  Relatedly, Plaintiff fails to allege that Marsico's recommendation was the result of others' discriminatory influence visited upon her, which could give rise to a "cat's paw" claim.  *Cf. Menaker v. Hofstra Univ.*, 935 F.3d 20, 37–38 (2d Cir. 2019) (explaining the "Cat's Paw" theory of liability).  Finally, Plaintiff does not allege that Marsico "had any control over his hiring or firing," thereby undermining any suggestion that Marsico was involved in the discriminatory action herself.  *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 845 (2d Cir. 2022); *see also Mendelsohn v. Univ. Hosp.*, 178 F. Supp. 2d 323, 327 (E.D.N.Y. 2002) (dismissing discrimination complaint against an interviewer where the plaintiff was not promoted, allegedly because of racial discrimination, where "the amended complaint does not allege who was responsible for making the ultimate decision, nor does it describe [the interviewer's] role, if any, in the decision-making process" or "even suggest that [the interviewer] was included in a general discussion involving which candidate should advance"); *cf. Bentley-Ammonds v. Northwell Health, Inc.*, No. 21-835-CV, 2022 WL 893716, at *2 (2d Cir. Mar. 28, 2022) (summary order) (affirming dismissal where an individual made an inappropriate remark that could otherwise have given rise to an inference of discrimination because the speaker, while having "input" in the plaintiff's termination, was not the ultimate decisionmaker).

By alleging only that Helou-Care's statement that "Marsico would recommend to the BOCES Board" that Plaintiff be terminated—and assuming Helou-Care's statement to be accurate, of course—Plaintiff has failed to adequately allege Marsico's discriminatory intent or personal involvement in the discriminatory action.  *See Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 301 (S.D.N.Y. 2005) (dismissing discrimination claims "[s]ince [the] plaintiffs have made no allegation that [the defendant] personally engaged in any discriminatory behavior" (quotation marks omitted)); *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376, 381 (S.D.N.Y. 1999) ("[I]f the plaintiff fails to plead any facts suggesting that a defendant displayed any intent to discriminate or was in an way involved in the alleged discriminatory scheme, the defendant may not be held liable.").  Thus, Defendants' Motion is granted with respect to Plaintiff's claims of race discrimination against her and such claims are dismissed with prejudice.

### ii.  Plaintiff's Qualifications

With respect to the second prong, Plaintiff has satisfactorily plead his qualifications. To meet this burden, Plaintiff needs to show either he was "qualified for the position" or "performing his duties satisfactorily."  *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001) (quotation marks omitted).  Indeed, the Second Circuit has "repeatedly held" that "the qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; [the] plaintiff must show only that he 'possess the basic skills necessary for performance of [the] job.'"  *Id*. at 92 (second alteration in original) (quoting *Owens v. N.Y.C. Housing Auth.*, 934 F.2d 405, 409 (2d Cir. 1991)).  "As a result, especially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw."  *Id.*

In the Amended Complaint, Plaintiff alleges that from 2017 through 2019 he was "rated as an overall effective teacher" with "effectively or highly effective" ratings and was given "excellent feedback." (AC ¶¶ 6–7.) Even when receiving lesser marks in 2019, Plaintiff still received a mixture of "effective and developing" ratings. (*Id.* ¶ 10.) Moreover, Plaintiff alleges that he received his special education certification after being told he was required to do so. (*Id.* ¶ 3.) Because "all that is required [to satisfy this requirement] is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer," *Wallace v. Crab H., Inc.*, No. 21-CV-5757, 2022 WL 1501089, at *4 (S.D.N.Y. May 12, 2022) (quoting *Slattery*, 248 F.3d at 91–92), Plaintiff's certification as well as his history of more-than-satisfactory reviews far surpasses his pleading requirements on this element. *See Bracey v. Waterbury Bd. of Educ.*, No. 17-CV-1100, 2020 WL 1062939, at *10 (D. Conn. Mar. 5, 2020) (finding that the necessary educational credentials, including a teaching certificate, was sufficient to be considered qualified as a teacher to meet this element, notwithstanding poor performance reviews).

### iii.  Discrimination Based on Adverse Actions

Plaintiff alleges two adverse actions giving rise to his discrimination claims—his disciplinary warning for tardiness and his termination— are in part intertwined, as Plaintiff alleges that his tardiness was one of the reasons he was fired, (*see* AC 18).

"An adverse employment action is a materially adverse change in the terms and conditions of employment," *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 286 (S.D.N.Y. 2020) (citing *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008)), that rises above "a mere inconvenience or an alteration of job responsibilities," *Brown*, 673 F.3d at 150 (quoting *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006)). This standard is only met when an

action is "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Albuja v. Nat'l Broad. Co. Universal, Inc.*, 851 F. Supp. 2d 599, 606 (S.D.N.Y. 2012) (quoting *Torres v. Pisano*, 116 F.3d 625, 632 (2d Cir. 1997)).

Courts in the Second Circuit have explained that "[e]xamples of materially adverse changes include *termination of employment*, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Karupaiyan v. CVS Health Corp.*, No. 19-CV-8814, 2021 WL 4341132, at *12 (S.D.N.Y. Sept. 23, 2021) (emphasis added) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).  Accordingly, "Plaintiff's firing is an adverse employment action." *Tenemille v. Town of Ramapo*, No. 18-CV-724, 2022 WL 126003, at *12 (S.D.N.Y. Jan. 13, 2022).

Whether Plaintiff's disciplinary warning constitutes a materially adverse employment action in its own right, however, is slightly trickier.  Plaintiff alleges two different justifications for his termination: a poor fit and unrelated to his performance, (AC ¶ 14), and his absences, (*id.* at 18).  Assuming the former and the absences did not precipitate his firing, such a warning would not constitute an adverse employment action, as "courts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation." *Young v. Town of Islip*, No. 13-CV-4713, 2017 WL 5468752, at *6 (E.D.N.Y. Nov. 13, 2017) (quoting *Uddin v. City of New York*, 427 F. Supp. 2d 414, 429 (S.D.N.Y. 2006)); *see also Bernstein v. N.Y.C. Dep't of Educ.*, No. 19-CV-11816, 2021 WL 4429318, at *12 (S.D.N.Y. Sept. 27, 2021) ("As long as there are no adverse follow-on effects, an employer has the right to deliver a disciplinary notice to an employee . . . without subjecting

itself to an employment discrimination lawsuit, for the risk of discipline . . . is an ordinary term and condition of employment."), *aff'd*, No. 21-2670, 2022 WL 1739609 (2d Cir. May 31, 2022); *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 212 (E.D.N.Y. 2014) ("A mere threat of discipline is not an adverse employment action."); *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001) (where a plaintiff was repeatedly warned but never disciplined, "[s]uch criticism, without any other negative results such as a decrease in pay or being placed on probation, simply [could] not support [the] plaintiff's discrimination claims"); *Stembridge v. City of New York*, 88 F. Supp. 2d 276, 283 (S.D.N.Y. 2000) (acknowledging that "an employment decision need not result in discharge to fall within the Title VII protection," but holding that, where a plaintiff failed to show that reprimand had "a cognizable or material impact on the terms or conditions of his employment," he had not established an adverse employment action).

On the other hand, assuming that his absences contributed to his firing, the picture is more muddled.  As the Second Circuit has long held, "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner."  *Joseph*, 465 F.3d at 91.  Plaintiff "did not dispute that he was late" on occasion, *Onofre Polanco v. 34th St. P'ship, Inc.*, 724 F. Supp. 2d 420, 426 (S.D.N.Y. 2010), nor does he make any allegations that termination as a result of such absences was against the school's policy, (*see generally* AC).  Accordingly, a disciplinary warning that results in termination is not an adverse employment action where there is no allegation that the employer has gone beyond the bounds of the plaintiff's employment contract and standard disciplinary policies.  *See Aiello v. Stamford Hosp.*, No. 09-CV-1161, 2011 WL 3439459, at *13 (D. Conn. Aug. 8, 2011) ("Courts in the Second Circuit have held that 'an employee does not suffer a materially adverse change in the terms and conditions of employment

where the employer merely enforces its preexisting disciplinary policies . . . .'" (quoting *Joseph*, 465 F.3d at 91)).  Therefore, Plaintiff has not plead a disparate treatment action on the basis alone of his disciplinary warning.

iv.  Discrimination Based on a Hostile Work Environment

To plausibly allege a discrimination claim on the basis of a hostile work environment, a plaintiff must demonstrate that the workplace exhibits "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotation marks omitted); *see also Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 723–24 (2d Cir. 2010) (holding that in a hostile work environment claim a plaintiff "must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." (quoting *Alfano v. Costello*, 294 F.3d 365, 373–74 (2d Cir. 2002))).  Whether an environment is hostile or abusive depends on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris*, 510 U.S. at 23.

These factors make clear that a plaintiff may satisfy this standard by "demonstrat[ing] either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment."  *Alfano*, 294 F.3d at 374 (quotation marks omitted) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)).  On the other hand, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's

29

purview." *Harris*, 510 U.S. at 21.  Likewise, "conduct [that] has not actually altered the

conditions of the victim's employment" does not support a claim for hostile work environment

under the statute.  *Id.* at 21–22.

      Here, Plaintiff's allegations of a hostile workplace environment do not begin to satisfy

this burden.  A hostile work environment claim is not meant to replicate or cannibalize

discrimination claims; rather, "it is a wholly separate cause of action designed to address other

types of work[-]place behavior, like constant jokes and ridicule or physical intimidation."

*Magadia v. Napolitano*, No. 06-CV-14386, 2009 WL 510739, at *17 (S.D.N.Y. Feb. 26, 2009)

(emphasis omitted) ("Hostile work environment is not a vehicle for resurrecting . . . claims of

discrimination . . . ; it is a wholly separate cause of action designed to address other types of

work place behavior, like constant jokes and ridicule or physical intimidation.  A plaintiff cannot

piggyback the discrete adverse acts about which he complains onto hostile work environment in

order to make them actionable.").  As the Supreme Court summarized:  "Hostile environment

claims are different in kind from discrete acts.  Their very nature involves repeated conduct."

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  Thus, "[a]llegations of

'discrete, adverse employment decisions concerning promotions, discipline, and appraisal, and

about employer criticism' are insufficient to state a claim for hostile work environment." *Calise*

*v. N.Y. State Dep't of Motor Vehicles*, No. 17-CV-791, 2018 WL 4350247, at *7 (S.D.N.Y. Sept.

12, 2018) (quoting *Olivier v. County of Rockland*, 2018 WL 401187, at *5 (S.D.N.Y. Jan. 11,

2018)).

      And yet, such discrete employment actions are the very focus of Plaintiff's allegations:

poorer performance evaluations, a disciplinary action, and his termination, all of which Plaintiff

alleges arose as a result of discrimination.  (*See generally* AC.)  While such acts are relevant to

his discrimination claims, they "do not support [his] claim of a hostile work environment where, as here, []he has failed to show how these events were in any way related to an ongoing practice of harassment." *Lioi v. N.Y.C. Dep't of Health & Mental Hygiene*, 914 F. Supp. 2d 567, 591 (S.D.N.Y. 2012); *see also Jordan v. United Health Grp. Inc.*, 783 F. App'x 31, 34 (2d Cir. 2019) (summary order) (noting that the plaintiff "does not explain how being disciplined for her unplanned absences and tardy arrivals created a hostile work environment"). Accordingly, Defendants' Motion is granted with regard to all hostile work environment claims.

v.  Inference of Discrimination

Plaintiff has adequately alleged an inference of discrimination sufficient to survive a motion to dismiss. The Second Circuit has long held that "[a]n inference of discrimination also arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." *Iscenko v. City of New York*, No. 16-CV-6535, 2017 WL 2880553, at *4 (S.D.N.Y. July 5, 2017) (quoting *Littlejohn*, 795 F.3d at 312); *see also Troise v. SUNY Cortland NY*, No. 18-CV-734, 2019 WL 3817387, at *7 (N.D.N.Y. Aug. 14, 2019) (same). Plaintiff clearly alleges such a fact pattern; specifically, Plaintiff avers that "the vacancy created by my termination was filled by a white male of a similar age." (AC ¶ 15; *see also* Pl.'s Mem. 8.)

Moreover, such an inference is only made stronger as Plaintiff alleges that Wilson indicated he was reducing the workforce because "BOCES is ultimately a business," implying the staff reduction was a cost-cutting exercise and terminating only one employee—Plaintiff—just to then turn around hire someone, undermining such a motivation. *See Turner v. Wilkie*, No. 18-CV-4038, 2020 WL 5371023, at *11 (S.D.N.Y. Sept. 8, 2020) (considering, on a motion for summary judgment, evidence that "undermin[ed the employer's] race-neutral explanation" as

31

"sufficient to support an inference of unlawful discrimination"); *cf. Atencio v. U.S. Postal Serv.*, 198 F. Supp. 3d 340, 354 (S.D.N.Y. 2016) ("Because the employer rarely leaves direct evidence of its discriminatory . . . intent, the Court must carefully comb the available evidence in search of circumstantial proof to undercut the employer's explanations for its actions.").[11]

Finally, this inference is stronger still considering the reasons allegedly provided for Plaintiff's termination: one opaque, one clear, and, when considered simultaneously, inconsistent. Regarding the former, unquestionably, "the Second Circuit has long held that, by itself, the use of subjective criteria does not support an inference of discrimination." *Buompane v. Citibank, N.A.*, No. 00-CV-7998, 2002 WL 603036, at *14 (S.D.N.Y. Apr. 18, 2002) (citing *Lieberman v. Gant*, 630 F.2d 60, 67 (2d Cir. 1980)). Indeed, "[a]n employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Altman v. New Rochelle Pub. Sch. Dist.*, No. 13-CV-3253, 2016 WL 3181153, at *4 (S.D.N.Y. June 2, 2016) (quoting *DeLuca v. Allied Domecq Quick Serv. Rests.*, No. 03-CV-5142, 2006 WL 1662611, at *9 (E.D.N.Y. June 13, 2006)).

At the same time, "[i]n employment discrimination cases, courts must give particular scrutiny" to subjective employment considerations, *Weiss v. JPMorgan Chase & Co.*, 332 F.

---

[11] Indeed, as the Second Circuit has made clear, "[a] plaintiff who claims unlawful discrimination in the termination of employment may prevail notwithstanding the fact that his job was eliminated as part of a reduction in workforce, for even during a legitimate workforce reduction, an employer may not dismiss employees for unlawful discriminatory reasons." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir. 1995) (quotation marks and citations omitted). In fact, "in a reduction-in-force case, a discharged employee who seeks under *McDonnell Douglas* to establish a prima facie case, need not show that he was replaced by a [person outside his protected class]; it is sufficient that the discharge occur in circumstances giving rise to an inference of . . . discrimination." *Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 105 (2d Cir. 1989).

App'x 659, 661 (2d Cir. 2009) (summary order), as (1) "any defendant can respond to a discrimination charge with a claim of some subjective preference or prerogative and, if such assertions are accepted, prevail in virtually every case" and (2) discriminatory considerations can influence the "formation of subjective impressions," *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 104–06 (2d Cir. 2001) (alterations and quotation marks omitted), *superseded in part on other grounds by* Fed. R. Civ. P. 37(e).  As the Fifth Circuit once opined, an "official's subjective belief that an individual [did] not 'fit in' or was 'not sufficiently suited' for a job is at least as consistent with discriminatory intent as it is with nondiscriminatory intent:  The employer just might have found the candidate 'not sufficiently suited' [or 'not a fit'] because of a protected trait such as age, race, or engaging in a protected activity."  *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004).  Accordingly, "[t]he Second Circuit has held that a proffered non-discriminatory reason for terminating an employee 'must be clear and specific.  Were vague or conclusory averments of good faith sufficient to satisfy the employer's burden . . . employees seeking to demonstrate pretext would be unfairly handicapped."  *Collings v. Indus. Acoustics Co.*, No. 99-CV-11875, 2001 WL 913909, at *3 (S.D.N.Y. Aug. 13, 2001) (alteration in original) (quoting *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985)).

Accepting as true—as the Court must—Plaintiff's allegation that one of the professed reasons for his termination was because "the 'fit wasn't right,'" (AC ¶ 14), the Court finds that such vagueness contributes to the inference of discrimination.  *See Collings*, 2001 WL 913909, at *3 (denying summary judgment where the employer offered "little more than conclusory statements about why he decided to terminate" the plaintiff, including citing the plaintiff's "inability and unsuitability to fit the type of organization [the defendant manager] was putting together," as statements were "far too inchoate to compel summary judgment"); *see also Franks*

*v. Edison Elec. Inst.*, No. 20-CV-3393, 2022 WL 971157, at *6 (D.D.C. Mar. 31, 2022) (denying summary judgment where an employer's reasoning for firing an employee, which included inter alia that the employee "was 'not a good fit,'" could be viewed by a reasonable jury "as evidence of pretext"); *Mammen v. Thomas Jefferson Univ.*, 462 F. Supp. 3d 518, 532 (E.D. Pa. 2020) (denying a motion to dismiss in a sex-discrimination case where the plaintiff allegedly "receiv[ed] positive annual reviews and [was] never [] told her job was in jeopardy" but where she was "terminated for the vague reason that she was 'not a good fit'"); *Edelstein v. Stephens*, No. 17-CV-305, 2020 WL 1846745, at *9 (S.D. Ohio Apr. 13, 2020) (denying summary judgment where the defendant's reason for firing the plaintiff was because he "did not 'fit in,'" finding that such "evidence could support a finding that [the defendant's] stated reason for [the] [p]laintiff's termination was pretext for discrimination"), *reconsideration denied*, 2021 WL 1168254 (S.D. Ohio Feb. 22, 2021).

To the extent Defendants could argue that this piece of information is blunted by the other alleged reason for Plaintiff's termination—his absences—they would be incorrect; the existence of a second, race-neutral motivation does not necessarily undermine this inference. The Second Circuit and district courts therein have repeatedly rejected dismissal or summary judgment where employers deploy multiple, contradictory explanations. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir.) ("The inconsistency between the justifications offered for [the plaintiff's] dismissal . . . raises a genuine issue of material fact with regard to the veracity of this non-discriminatory reason." (citation omitted)), *cert. denied*, 530 U.S. 1261 (2000); *Belfi v. Prendergast*, 191 F.3d 129, 139 (2d Cir. 1999) (holding that "[c]ircumstantial evidence in the form of differing and inconsistent explanations from the [defendant] raise questions of fact to rebut its alleged non-discriminatory reasons for the wage disparity, and may

34

provide the jury with a basis to find pretext"); *Kane v. Helsinki*, No. 18-CV-1355, 2021 WL 2457150, at *12 (N.D.N.Y. June 16, 2021) ("In light of the inconsistency between the legitimate, nondiscriminatory reason [the] [d]efendant now offers, and the prior reasons given for [the] [p]laintiff's termination, there is a triable issue of fact as to whether [the] [d]efendant's proffered reason was pretextual."); *cf. Lashley v. New Life Bus. Inst., Inc.*, No. 13-CV-2683, 2015 WL 1014128, at *6 (E.D.N.Y. Mar. 9, 2015) (holding that where defendants "presented multiple, inconsistent reasons for [the] plaintiff's firing[,]. . . [t]he jury was entitled to take this evidence and determine that [the] defendants were unable to present a cohesive, legitimate, non-discriminatory reason for [the] plaintiff's termination").

Arguably the most on-point (and thus instructive) case is *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116 (2d Cir. 1994). In that case, the Second Circuit found it dispositive that the defendant employer "originally discounted performance as a determinative factor" for the plaintiff's termination only to rely on it in subsequent proceedings because "a reasonable juror could infer that the explanations given by [the defendant] at trial were pretextual." *Id.* at 120. This fact pattern resembles the facts alleged in this Action: one alleged statement that performance was not at all influential in Plaintiff's termination, only to be cited after the first reason proffered could have given rise to an inference of discrimination. *Cf. DeMarco v. Holy Cross High School*, 4 F.3d 166, 171 (2d Cir. 1993) (stating that the pretext inquiry takes into consideration "whether the putative non-discriminatory purpose was stated only after the allegation of discrimination"); *Schmitz v. St. Regis Paper Co.*, 811 F.2d 131, 132 (2d Cir. 1987) (per curiam) (holding that a shift in justifications given at an employment discrimination trial indicated an

"after-the-fact rationalization" by the defendant of an inappropriate justification and could be sufficient to prove pretext).[12]

Considering the "'bits and pieces' of information" Plaintiff has alleged, "i.e., a 'mosaic' of intentional discrimination," the Court concludes that Plaintiff has adequately alleged facts to "to support an inference of discrimination." *Vega*, 801 F.3d at 86 (quoting *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998)).[13]

---

[12] The Court also notes that Plaintiff alleges that no other African Americans now works at CBI Tech. (*See* AC ¶ 16; Pl.'s Mem. 4.)  Courts have repeatedly held that the termination of a lone member of a protected class "does not, without more, give rise to an inference" of discrimination. *Taylor v. Seamen's Soc. For Child.*, No. 12-CV-3713, 2013 WL 6633166, at *13 (S.D.N.Y. Dec. 17, 2013); *see also Oteng-Amoako v. HSBC Bank USA*, No. 13-CV-5760, 2014 WL 7476239, at *5 (S.D.N.Y. Dec. 30, 2014) ("[T]he mere fact that [the plaintiff] was the only Black employee in the Group, and perhaps its only African employee, does not, without more, give rise to an inference that his termination was motivated by discrimination."), *report and recommendation adopted*, 2015 WL 2399847 (S.D.N.Y. May 19, 2015).  But that is not to say that this allegation is irrelevant; it is properly appraised at a "limited value," *Risco v. McHugh*, 868 F. Supp. 2d 75, 105 (S.D.N.Y. 2012).

[13] Plaintiff also alleges an inference of discrimination based on disparate treatment between himself and white counterparts insofar as Plaintiff alleges that he "received a false disciplinary warning regarding his alleged tardiness to school while similarly situated Caucasian teachers . . . had attendance issues but were not disciplined." (Pl.'s Mem. 11.)

"To establish an inference of discrimination, a plaintiff must allege that []he was similarly situated in all material respects to the individuals with whom []he seeks to compare [him]self." *Brown*, 756 F.3d at 230 (quotation marks omitted). Here, Plaintiff has failed to put forth sufficient detail to consider these three additional teachers sufficiently similar to give rise to such an inference.  To be sure, while a plaintiff's and comparator's circumstances need not be "identical," they must bear a "reasonably close resemblance." *Id.* (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).  Plaintiff states that the comparators are all tenured, (*see* Pl.'s Mem. 3), but he has not alleged that he, too, is tenured, (*see generally id.*).  So, too, did Plaintiff omit sufficient details regarding "(1) whether [he] and [the comparators] were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness," *Solomon v. Fordham Univ.*, 2020 WL 7711697, at *9 (S.D.N.Y. Dec. 29, 2020) (quoting *Graham*, 230 F.3d at 40), such that the Court could infer a discriminatory animus.  However, having met his pleading requirements—both with respect to adverse actions as well as the inference of discrimination—based on other allegations, Plaintiff's lack of detail regarding his comparators is not fatal to his claim.

### 3.  Marital Status Discrimination Claims

Finally, the Court considers the discrimination claims under NYSHRL based on Plaintiff's marital status.  Plaintiff argues that his discrimination stems from the service of his child support papers.  (*See* Pl.'s Mem. 10.)  Defendants, by contrast, argue that Plaintiff's allegations cannot support such a claim, as there is "no authority" connecting such papers (or obligation generally) and his marital status.  (Defs.' Reply Mem. 9.)

### a.  Applicable Law

While "marital status alone is not a ground for bringing a suit under Title VII," *Fisher v. Vassar Coll.*, 70 F.3d 1420, 1447 (2d Cir. 1995), "[t]he standards for a state discrimination claim under the NYSHRL are the same as for a federal claim under Title VII," *Secka v. Dentserve Mgt. Services, Inc.*, No. 12-CV-2560, 2013 WL 563364, at *6 (S.D.N.Y. Feb. 11, 2013) (citing *Vivenzio v. City of Syracuse*, 611 F.3d at 98, 106 (2d Cir. 2010); then citing *Forrest v. Jewish Guild for the Blind*,  819 N.E.2d 998, 1006 n.3 (N.Y. 2004)).  Having articulated the features of the *McDonnell Douglass* framework above for Title VII, § 1981, and NYSHRL claims, the Court declines to do so again.

### b.  Application

With regard to Plaintiff's claims of discrimination based on marital status, Plaintiff alleges only one fact: that Plaintiff was served with the child support papers at school on March 4, 2020, less than one month before he was terminated.  (AC ¶ 12.)  Plaintiff argues that "[i]t follows from the fact that he was served with child support papers[] that [Plaintiff] was divorced or separated, and therefore this status is protected and states a viable claim that should proceed to discovery as well."  (Pl.'s Mem. 10.)  Defendants rebut this argument: "Plaintiff cites no authority for this and includes no support whatsoever to demonstrate how owing child support is

a 'marital status' as set forth in § 296 of the Executive Law."  (Defs.' Reply Mem. 9.)

Defendants are correct.

Plaintiff fails to put forward any allegations that identify his marital status at all.  Indeed,

Plaintiff does not even state that he is divorced; rather, Plaintiff assumes that his colleagues have

inferred his marital status based on his child support requirements.  This assumption is

unfounded.  According to the most recent data released by the United States Census Bureau,

there are 12.9 million custodial parents in the United States as of April 2018.  *See* Timothy Grall,

*Custodial Mothers and Fathers and Their Child Support: 2017*, App. Table III (2020),

https://www.census.gov/content/dam/Census/library/publications/2020/demo/p60-269.pdf

("Custodial Parents Statistics Table").[14]  Of those, 6.3 million have some form of child support

agreements or awards, 2 million of whom were never married and 1.3 million of whom are

currently married; the remaining 3 million are either divorced or legally separated.  *Id.*[15]  In other

words, it is more likely that Plaintiff, having a child support obligation, was *not* divorced than

was divorced.

Beyond Plaintiff's hope to create this inference via the lone allegation regarding service

of his child support papers, Plaintiff "has not adduced any facts that link the complained-of

events to [his] status" as a divorcé.  *Coraggio v. Time Inc. Mag. Co.*, No. 94-CV-5429, 1996 WL

---

[14] "Fed. R. Evid. 201 permits the Court to take judicial notice of statistics and [] information from official government websites."  *W.D. v. Rockland County*, 521 F. Supp. 3d 358, 373 n.8 (S.D.N.Y. 2021) (collecting cases); *see also Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.*, 630 F. Supp. 2d 255, 263 n.3 (E.D.N.Y. 2008) ("The Court can take judicial notice of government statistics."); *City Bank Farmers' Trust Co. v. United States*, 5 F. Supp. 871, 873 (S.D.N.Y. 1934) (taking judicial notice of statistics published by Commerce Department).

[15] This figure excludes an unknown number of the 181,000 custodial parents who are widowed but whose child support agreement status is not listed.  *See* Custodial Parents Statistics Table.

139786, at *7 (S.D.N.Y. Mar. 28, 1996), *aff'd*, 108 F.3d 329 (2d Cir. 1997).  Thus, "[e]ven

viewed through a plaintiff-oriented prism, these events do not give rise to an inference of marital

status . . . discrimination." *Id.*

"A plaintiff may, of course, plead in the alternative, but the [concession] of other possible

reasons for [Plaintiff's firing, namely racial discrimination] combined with the lack of any

specific factual support for his claim of a [marital status] motivation illustrates that his claim

here is simply a 'naked allegation' of [marital status] discrimination." *Yusuf v. Vassar College*,

35 F.3d 709, 714 (2d Cir. 1994).  Accordingly, Defendants' Motion with respect to Plaintiff's

claim of discrimination on the basis of his marital status is granted, and such claims are

dismissed.

### III. Conclusion

For the foregoing reasons, Defendants' Motion is granted in part and denied in part.

Specifically, Defendants' Motion is denied as to Plaintiff's race/color discrimination claims

regarding his termination under 42 U.S.C. §1981 against all Defendants, under Title VII against

BOCES, and under NYSHRL against Wilson.  Defendants' Motion is granted as to Plaintiff's

federal and state racial discrimination claims on the basis of harassment or creation of a hostile

work environment claims as well as his claims of discrimination on the basis of his

marital status.  Defendants' Motion is also granted as to Plaintiff's state racial discrimination

claims against BOCES for failure to file a notice of claim.  Finally, Defendants' Motion is

granted regarding Plaintiff's claims against Marsico for lack of involvement.

Because this is the first adjudication of the majority of Plaintiff's claims on the merits,

the dismissal of those claims is without prejudice.  *See Terry v. Incorporated Village of*

*Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a

general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile").  By contrast, as stated above, Plaintiff's claims against Marsico were previously adjudicated.  *See supra* II.B.2.b.i.  (*See also* 2021 Op. 2.)  Accordingly, claims against her are dismissed with prejudice.  *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Maione v. Zucker*, No. 18-CV-7452, 2022 WL 784483, at *9 (S.D.N.Y. Mar. 15, 2022) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (quoting *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016)).  And because Plaintiff "does not dispute" Defendants' arguments regarding his claims under New York City Human Rights Law, (Pl.'s Mem. 9), there is no suggestion that Plaintiff possesses additional facts that could remedy the problems; accordingly, such claims are also dismissed with prejudice.  *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (holding that dismiss with prejudice is proper where there is no indication the plaintiff could provide additional allegations leading to a different result).

Should Plaintiff choose to file a second amended complaint to remedy the infirmities identified regarding those claims dismissed without prejudice, he must do so within 30 days of this Opinion, addressing the deficiencies identified herein.  The second amended complaint will replace, not supplement, the complaint currently before the Court.  It therefore must contain all of the claims and factual allegations Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the 30-day deadline, the claim dismissed without prejudice may be dismissed with prejudice, and Plaintiff's case will go forward only on its surviving claims.

The Clerk of Court is respectfully directed to terminate the pending Motion.  (Dkt. No.

24.)  The Court will hold a status conference on November 2, 2022, at 3:00 p.m.

SO ORDERED.

DATED:          September 28, 2022
               White Plains, New York

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

41