UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
PEDRO JOHNSON,  :
                Plaintiff,  :
                  :
v.  :  **OPINION AND ORDER**
                  :
ROCKLAND COUNTY BOCES and  :  21 CV 3375 (VB)
DANIEL WILSON,  :
                Defendants.  :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Pedro Johnson brings this action against defendants Rockland County Board of Cooperative Educational Services ("BOCES") and Daniel Wilson ("Wilson"), claiming they unlawfully discriminated against him on account of his race when he was terminated from his position as a special education social studies teacher in 2020.

    Following defendants' motion to dismiss, which was granted in part and denied in part, plaintiff's remaining claims are as follows: (i) a race discrimination claim under Section 1981 of the Civil Rights Act of 1866 ("Section 1981") against BOCES and Wilson; (ii) a race discrimination claim under Title VII of the Civil Rights Act of 1964 ("Title VII") against BOCES; and (iii) a race discrimination under the New York State Human Rights Law ("NYSHRL") against Wilson.

    Now pending is defendants' motion for summary judgment. (Doc. #71).

    For the reasons set forth below, the motion is DENIED.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

1

**BACKGROUND**

The parties have submitted briefs, a statement of material facts pursuant to Local Civil Rule 56.1, and declarations with exhibits. These submissions reflect the following factual background.

I.       Plaintiff's Employment at BOCES

Plaintiff, an African American man, was employed as a special education social studies teacher at BOCES CBI Tech High School ("CBI Tech") from November 2017 until he was terminated from his position in June 2020. BOCES is a New York state program that provides educational services to school districts for students with special needs, among other services. CBI Tech is an alternative secondary program within BOCES for students with emotional, behavioral, and learning challenges. (Doc. #76 ¶ 3). Plaintiff has 30 years of teaching experience in the New York area and holds various qualifications, including multiple secondary degrees and certifications in general special education and social studies secondary education.

In November 2017, plaintiff was hired by Rockland County BOCES. In early 2018, plaintiff was instructed by the then-principal of CBI Tech, Pamela Charles, to obtain a general special education certification in order to continue teaching special education studies. In July 2019, plaintiff received his general special education certification.

During Charles's tenure as CBI Tech's principal, she conducted both announced and unannounced classroom evaluations of plaintiff in 2018 and 2019. In her evaluations, Charles rated plaintiff in the relevant assessment categories as "highly effective" or "effective." (Doc. #83-5). Charles's evaluations also referenced plaintiff's punctuality and attendance. For example, in a classroom evaluation submitted in January 2019, in the section marked "additional comments," Charles noted that plaintiff had arrived late to work on several occasions. (Doc.

#83-5 at ECF 6).[1]  Specifically, she observed plaintiff had arrived on certain days at 7:51, 7:52, 7:49, and 7:47 a.m., after the mandated arrival time of 7:45 a.m.  (Id.).  Charles noted plaintiff "need[ed] to improve his lateness . . . to avoid a formal write up."  (Id.).  Plaintiff does not dispute he arrived late those dates but contends his tardiness was due to bad weather or road accidents during the winter months.  It is undisputed that Charles never formally "wrote up" plaintiff.

On July 1, 2019, defendant Wilson replaced Charles as principal of the Rockland County BOCES CBI Tech program.

II.     Defendants' Allegedly Discriminatory Behavior

According to plaintiff, after Wilson became principal of CBI Tech, the student body population of CBI Tech began to change.  During a faculty meeting in October 2019, plaintiff also contends Wilson stated he intended to admit a "new type" of student to CBI Tech.  (Doc. #84-1 ("Am. Compl.") ¶ 8).

During his tenure as principal, Wilson also conducted classroom evaluations of plaintiff.  In one evaluation dated January 2020, Wilson rated plaintiff as "developing" in several categories.  In addition, Wilson observed that only "[o]ne student answered most of the questions" and noted plaintiff gave students only "13 minutes to write an essay."  (Doc. #74-1 at ECF 1–4).  In response, plaintiff contends Wilson did not observe the entirety of plaintiff's lesson and that, of the two students present on the day of the observation, only one spoke English.  (Doc. #83-6 at ECF 2).  Wilson contends a teacher with plaintiff's credentials should be

---

[1]     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing System.

able to "properly address and formatively assess" a student whose second language is English, and points to plaintiff's actions as evidence of his poor classroom performance. (Doc. #86 ¶ 14).

On March 2, 2020, Wilson issued two counseling memos to plaintiff, one regarding his lateness (the "Lateness Memo") and another about his attendance record (the "Attendance Memo"). (Docs. ##83-7, 83-8). In the Lateness Memo, Wilson stated he had observed plaintiff arriving to school late on four days in January and February 2020 and that plaintiff's "excessive lateness is a situation that cannot continue." (Doc. #83-7 at ECF 1). In the Attendance Memo, Wilson addressed plaintiff's "chronic absenteeism record" and provided a chart detailing the number of days plaintiff had taken off for sick, personal, family illness, and bereavement leave in 2018, 2019, and 2020. (Doc. #83-8 at ECF 1). According to Wilson, plaintiff's attendance record "demonstrates a chronic and persistent attendance issue that is unacceptable." (Id.).

Plaintiff's employee attendance calendar for 2018 and 2019 demonstrates that plaintiff used days he had accrued for personal, family illness, and sick days, but did not use more days than he had accrued. (Doc. #83-10).

III.   Plaintiff's Termination and Replacement

On March 31, 2020, Wilson informed the faculty that Rockland County BOCES "would be reducing staff as BOCES is ultimately a business." (Am. Compl. ¶ 13). At some point in early 2020, Wilson recommended to the Rockland County BOCES Central Administration that plaintiff's employment be terminated.

On April 3, 2020, the executive director of human resources, Yasmin Helou-Caré, informed plaintiff via letter that "the Central Administration would . . . recommend to the Rockland BOCES' Board of Education that" he be terminated effective June 30, 2020. (Doc. #73 ¶ 19). The letter did not identify any reasons for plaintiff's termination. (Doc. #83-9).

4

According to plaintiff, he and Helou-Caré had a phone conversation on or about April 3, 2020, in which she advised plaintiff he was being terminated for his chronic lateness and absenteeism. (Doc. #83-2 at 86). Plaintiff also contends Helou-Caré informed plaintiff he was "[a]t this time . . . not a fit." (Id. at 87). Although defendants terminated plaintiff for his lateness, absenteeism, and poor performance, these reasons were not formally documented as justifications for plaintiff's termination, either in the April 3, 2020, letter or at any point thereafter. (Doc. #84-5 at 56:3–13).

It is undisputed that no other faculty members were terminated as part of the larger reduction in force discussed by Wilson. At the time of plaintiff's termination, there were no other African American teachers working at CBI Tech. (Doc. #84-3 at 82).

Soon after plaintiff's termination, a white man was hired to replace him. (Doc. #83 ¶ 4). Although defendants argue the new teacher was himself later terminated for lateness and absenteeism, plaintiff contends the new teacher was also terminated for sleeping during class. (Doc. #84 ¶ 8; Doc. #84-3 at 91).

## DISCUSSION

I.   Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[2]

A fact is material when it "might affect the outcome of the suit under the governing

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

law . . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

II.     Race Discrimination Claims

Defendants argue they are entitled to summary judgment on plaintiff's Title VII, Section 1981, and NYSHRL race discrimination claims because plaintiff fails to establish a prima facie case and cannot show defendants' proffered non-discriminatory reasons for terminating plaintiff's employment are pretextual.

The Court disagrees.

A.      Legal Standard

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation,

6

terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

The NYSHRL similarly prohibits discrimination against an employee based on that employee's "age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence." N.Y. Exec. Law § 296(1).

Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." Patterson v. County of Oneida, 375 F.3d 206, 224 (2d Cir. 2004); 42 U.S.C. § 1981(a).

When, as here, a plaintiff's Title VII, Section 1981, or NYSHRL discrimination claims are based on circumstantial evidence of discriminatory intent, the claims are analyzed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Alvarado v. United Hospice, Inc., 631 F. Supp. 3d 89, 111 (S.D.N.Y. 2022) (collecting cases under all three statutes); see Porter v. Dartmouth-Hitchcock Med. Ctr., 92 F.4th 129, 149 (2d Cir. 2024) (explaining the McDonnell Douglas framework applies only in the absence of direct evidence).

Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of discrimination by showing "(i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination." Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002). Plaintiff's "burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998).

7

Once a plaintiff presents a prima facie case, the defendant bears the burden of articulating a legitimate, non-discriminatory reason for the employment action. Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). If a defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude the employer's explanation is merely a pretext for actual discrimination. Id.

To satisfy the burden of showing pretext on summary judgment, a plaintiff "need only show that the employer's stated reason—even if true or factually accurate—was not the real reason, in the sense that it was not the entire reason due to a coexisting impermissible consideration." Bart v. Golub Corp., 96 F.4th 566, 575 (2d Cir. 2024) (emphasis in original). Plaintiff must "produce admissible evidence showing circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Id. at 576. A plaintiff may establish pretext "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nondiscriminatory reason for its action." Ramos v. Marriott Intern., Inc., 134 F. Supp. 2d 328, 343 (S.D.N.Y. 2001).

The Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent." Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008). Because of the "elusive nature of intentional discrimination, plaintiffs must often rely on bits and pieces of information to support an inference of discrimination." Banks v. General Motors, LLC, 81 F.4th 242, 259 (2d Cir. 2023). "The resulting 'mosaic of intentional discrimination" may be sufficient to show discrimination." Id. (citing Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86 (2d Cir. 2015)).

B.     Analysis

As plaintiff does not present direct evidence of discrimination or contend defendants' actions were discriminatory on their face, the Court will analyze plaintiff's discrimination claims under the McDonnell Douglas framework.

1.     Prima Facie Case

Defendants do not dispute that plaintiff, an African American man, is a member of a Title VII protected class or that his termination constitutes an adverse employment action. However, defendants argue plaintiff fails to establish two elements of a prima facie case: that plaintiff was qualified for his role, and that his termination and replacement by a white male teacher gives rise to an inference of discrimination.

The Court disagrees.

Viewing the totality of the evidence in the light most favorable to plaintiff, a reasonable jury could find plaintiff was qualified for his job as a special education social studies teacher. Plaintiff has thirty years of teaching experience and holds a bachelor's and master's degree in education and administration. Prior to his employment at BOCES, plaintiff was a tenured teacher in the Mamaroneck School District and previously taught in the Poughkeepsie School District and at Dutchess County BOCES. Plaintiff also holds various certifications, including a special education certification he obtained as part of his work at CBI Tech. Furthermore, when Charles was principal of CBI Tech, plaintiff regularly received evaluations of "effective" or "highly effective" in every evaluation category. (Am. Compl. ¶¶ 6, 7; Doc. #83-5). Accordingly, the Court finds a reasonable jury could conclude plaintiff was qualified for his position.

Similarly, a reasonable jury could conclude plaintiff's termination and replacement by a white male teacher creates an inference of discrimination. Defendants argue plaintiff was

9

terminated due to his attendance record, tardiness, and poor job performance. (Doc. #73 ¶ 18). But according to plaintiff, Wilson stated at a faculty meeting on March 31, 2020, that Rockland County BOCES would undertake a reduction in force because "BOCES is ultimately a business." (Am. Compl. ¶ 13). Despite this allegedly impending reduction in force, presumably intended to reduce costs, defendants terminated only one employee—plaintiff, an African American man—and soon thereafter replaced him with a white man. A reasonable jury could find defendants' actions give rise to an inference of discrimination.

Accordingly, the Court finds a reasonable jury could conclude that plaintiff has met his minimal burden of establishing a prima facie case.

### 2. Legitimate, Non-discriminatory Reasons

Defendants proffer alternative reasons for plaintiff's termination—namely, plaintiff's allegedly poor attendance record, tardiness, and poor performance. These alternative justifications for plaintiff's termination are substantiated by Wilson's Attendance and Lateness Memos and Wilson's classroom evaluations of plaintiff, in which he rated plaintiff as "developing" in certain categories.

Accordingly, the Court finds defendants have articulated legitimate, non-discriminatory reasons for plaintiff's termination.

### 3. Pretext

Because defendants have articulated legitimate, non-discriminatory reasons for plaintiff's termination, the burden shifts back to plaintiff to show these reasons are pretextual. Defendants contend plaintiff cannot make this showing.

The Court disagrees, because a reasonable jury could find defendants' articulated reasons for terminating plaintiff were pretextual.

First, defendants contend plaintiff was terminated for his attendance, tardiness, and poor performance. Viewing the evidence in the light most favorable to plaintiff, defendants' reasons for terminating plaintiff for cause are supported by extremely thin evidence. The record reflects that plaintiff availed himself in 2018, 2019, and 2020 of sick, personal, family illness, and bereavement days he had accrued, but he never exceeded the number of accrued days in each category. (Doc. #83-10). Therefore, a reasonable jury could discount defendants' argument that plaintiff's use of his accrued days "demonstrates a chronic and persistence attendance issue" (Doc. #83-8 at ECF 1) and conclude that reliance on plaintiff's attendance record was a pretext for his discriminatory termination.

As for plaintiff's tardiness, a reasonable jury could also find this justification for plaintiff's termination is pretextual. The record reflects that plaintiff did arrive late to school on several occasions. During Charles's tenure, for example, she documented several days on which plaintiff arrived to work up to seven minutes late and detailed the exact dates and times of his arrivals. Despite plaintiff's tardiness, no disciplinary action was taken against him while Charles was principal. When Wilson became principal, he contends he personally witnessed plaintiff arriving late to work, but unlike the records during Charles's tenure, there are no records of plaintiff's actual arrival times. In the Lateness Memo—issued the same day as the Attendance Memo—Wilson notes the four dates he contends plaintiff arrived late to work in January and February 2020 but includes no details to indicate the severity of plaintiff's tardiness or whether plaintiff's arrivals were delayed several minutes due to, according to plaintiff, inclement weather during the winter. (Doc. #83-7).

To illustrate the importance of plaintiff's timely arrival to work, Wilson contends that on March 19, 2019, a student at CBI Tech was stabbed with a pair of scissors by another student.

11

(Doc. #86 at ¶ 11). Yet there is no evidence plaintiff was involved in this incident and defendants do not contend that anything plaintiff did or did not do had any bearing on this incident. Defendants use of a stabbing incident to emphasize the importance of plaintiff's punctuality—when the incident has no relation to plaintiff—could provide a further basis for a reasonable jury to find pretext. Therefore, although tardiness does constitute a legitimate, non-discriminatory reason for plaintiff's termination, on this record a reasonable jury could conclude plaintiff's arrival to work a few minutes late on a few different occasions was used as a pretext for firing him. See Bart v. Golub Corp., 96 F.4th at 575 (plaintiff need only show employer's stated reason for terminating an employee "was not the entire reason due to a coexisting impermissible consideration") (emphasis in original).

Furthermore, a jury could also find defendants' explanation that plaintiff was fired for poor performance was pretextual. It is undisputed plaintiff received consistent, positive feedback and formal evaluations during Charles's tenure as principal. However, within a few months of Wilson's term as principal, Wilson rated plaintiff as "developing" in the same categories, and these evaluations were used shortly thereafter to justify plaintiff's termination. By pointing to Charles's classroom evaluations as evidence he performed his duties in a satisfactory manner, plaintiff can make an adequate showing that "the employer's proffered explanation is unworthy of credence." Texas Dep't. of Cmty. Affs. v. Burdine, 450 U.S. 248, 256 (1981); see also Thermidor v. Beth Israel Med. Cntr., 683 F. Supp. 403, 412 (S.D.N.Y. 1988) (plaintiff's conclusory statements failed to demonstrate employer's claim of unsatisfactory job performance was pretextual).

Second, a reasonable jury could find defendants' shifting justifications for firing plaintiff demonstrates that these reasons were pretextual. For example, in Helou-Caré's phone

conversation with plaintiff, during which she discussed the terms of his termination, she informed plaintiff he was being fired for lateness and absenteeism. However, these reasons were never formally documented. Moreover, according to plaintiff, Helou-Caré also mentioned plaintiff was being terminated because he was not the right "fit" for the school. (Doc. #83-2 at 87). In circumstances in which an employer "offer[s] shifting and somewhat inconsistent explanations" for an employee's termination, a reasonable jury could find the employer's reason pretextual. Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 847 (2d Cir. 2013). Accordingly, a reasonable jury could conclude defendants' multiple reasons for terminating plaintiff were pretextual.[3]

To survive summary judgment in a race discrimination case, a plaintiff need not show an employer's stated reason for an adverse employment action was false but instead need only present evidence "indicating that the employer's adverse action was motivated at least in part by

---

[3] In his amended complaint, plaintiff points to another allegedly pretextual reason for his termination. Plaintiff argues his termination was preceded by the announcement of a larger impending reduction in force at BOCES, to be conducted for "business" reasons. (Am. Compl. ¶ 13). Plaintiff says Wilson announced the planned reduction of force at a meeting on March 31, 2020, approximately three days before plaintiff was informed of his termination. However, despite purporting to engage in what was presumably a cost-cutting exercise, BOCES fired only one employee—plaintiff—and replaced him with a white male teacher.

Defendants do not address plaintiff's reduction in force argument and instead point out that the new teacher was himself fired for absenteeism and tardiness soon after being hired, but these contentions are misplaced as they do not bear on defendants' initial decision to fire plaintiff. If anything, defendants' arguments only provide more bases for a reasonable jury to find pretext, because the white male teacher's termination was not characterized as part of BOCES alleged "reduction in force" but was instead for cause.

Moreover, as the Court previously found in deciding the motion to dismiss, defendants' contradictory reasons for terminating plaintiff could provide the jury with a basis to find pretext. (Doc. #35 at 34–35). Therefore, a reasonable jury could find that the reduction in force— announced only a few days before plaintiff was told he would be fired—was a purported reason for plaintiff's termination and that this reason contradicts defendants' arguments that plaintiff was also fired for cause. See Carlton v. Mystic Transp., Inc., 202 F.3d 129, 137 (2d Cir. 2000).

the plaintiff's membership in a protected class." Bart v. Golub Corp., 96 F.4th at 576. Here, a reasonable jury could find "implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nondiscriminatory reason for its action" and conclude defendants' reasons for firing plaintiff are pretextual. Ramos v. Marriott Intern., Inc., 134 F. Supp. 2d at 343. Therefore, a reasonable jury could find that plaintiff's evidence as to defendants' motivations constitutes a "mosaic of intentional discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 86.

Accordingly, defendants are not entitled to summary judgment on plaintiff's Title VII, Section 1981, and NYSHRL race discrimination claims.

## CONCLUSION

The motion is DENIED.

The Court will conduct a case management conference on September 24, 2025, at 2:30 p.m., to be held in person at the White Plains courthouse, Courtroom 620, at which time counsel shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what good faith efforts they have made and will continue to make to settle this case. To be clear, counsel are directed to discuss settlement in good faith prior to that date.

The Clerk is instructed to terminate the motion. (Doc. #71).

Dated: July 21, 2025
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge